```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


MARCEL CLARK,                    )
                                 )
          Petitioner,            )
                                 )
     v.                          )    No. 4:07 CV 1697 CEJ
                                 )                     DDN
DAVE DORMIRE,                    )
                                 )
          Respondent.            )
```

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This action is before the court upon the petition of Missouri state prisoner Marcel Clark for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to the undersigned United States Magistrate Judge for review and a recommended disposition pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, the undersigned recommends that the petition for a writ of habeas corpus be denied.

### I. BACKGROUND

On August 13, 2002, a jury in the Circuit Court of St. Louis County returned guilty verdicts against petitioner Clark on one count of first degree burglary and one count of third degree assault against a law enforcement officer. (Doc. 10, Ex. D at 30-31.) Petitioner moved for judgment of acquittal or in the alternative motion for a new trial. One of the grounds for the motion was that the trial court erred when it denied petitioner's motion to sever the offenses. (Id., Ex. D at 33.) Ultimately, the court sentenced petitioner to twenty years imprisonment for the burglary and one year for the assault. (Id. at 38-39.)

Petitioner appealed his conviction to the Missouri Court of Appeals, alleging that there was insufficient evidence to establish one of the elements of the crime (unlawful entry) and that the two offenses were not properly tried together. (Id., Ex. A at 9-10.) The Missouri Court of Appeals affirmed. State v. Clark, 113 S.W.3d 690 (Mo. Ct. App. 2003)(summary order); (Doc. 10, Ex. E Memorandum Supplementing Order Affirming Judgment Pursuant to Rule 30.25).

Shortly thereafter, petitioner moved for post-conviction relief under Missouri Supreme Court Rule 29.15, arguing insufficiency of the evidence to support the conviction, the failure of the trial court to sever the charges, his counsel's failure to advise him about his right to testify in his own defense, the irreparable breakdown in communication between him and his counsel, and a conflict of interest on the part of his counsel. (Doc. 10, Ex. H at 3-23.) In an amended motion he alleged he received constitutionally ineffective assistance of trial counsel, because his trial counsel did not move to suppress evidence of a pre-trial show-up identification of him, and because trial counsel did not object to the victim's identification of him at trial. (Id. at 30-32.) After an evidentiary hearing, the circuit court denied post-conviction relief. (Id. at 42-48.)

Petitioner appealed the denial of post-conviction relief to the Missouri Court of Appeals, arguing as a single point that his trial counsel rendered ineffective assistance by not moving to suppress the pretrial trial show-up identification of him and by not objecting to the identification of him during trial. (Id. Ex. F at 9.) The Missouri Court of Appeals affirmed the denial of post-conviction relief. Clark v. State, 204 S.W.3d 695 (Mo. Ct. App. 2006)(summary order); (Doc. 10, Ex. I Memorandum Supplementing Order Affirming Judgment Pursuant to rule 84.16(b)).

In its opinion affirming the conviction, the Missouri Court of Appeals described the following facts which were supported by the evidence:

> Clara Estep (Mrs. Estep) and Norman Estep (Mr. Estep) reside at 658 Coachway in Hazelwood, Missouri. On December 21, 2001, Mrs. Estep was cooking in the kitchen. Mr. Estep left the house to visit his daughter, Sharon Ward (Ward), who lived four-tenths of a mile down the street from Mr. and Mrs. Estep. Mr. Estep drove the car out of the garage and left the garage door open. Mr. and Mrs. Estep's home has an attached garage with a door leading directly from the garage to the kitchen.
>
> After Mr. Estep left, Mrs. Estep heard someone repeatedly and rapidly ringing the doorbell. Mrs. Estep looked through the peephole and saw [petitioner] and his accomplice, Aldonte Spaulding. Mrs. Estep watched [petitioner] and his accomplice through the peephole and

through the windows in the living and dining room while they continued to repeatedly ring the doorbell. During this time, Mrs. Estep engaged the deadbolt lock on the door between the kitchen and garage, called her husband and asked him to come home, and called 911 to report the incident. When the doorbell stopped ringing, Mrs. Estep saw the two men walk from the front porch in the direction of the garage and disappear.

Mrs. Estep then noticed that the doorknob on the door connecting the kitchen to the garage was jiggling. Suddenly the door flew open and the doorframe split. On the door was a footprint indicating that the door was forced open by kicking. Mrs. Estep began to scream, and the two men turned and ran from the garage. At that moment, Mr. Estep drove up and saw the two men running across the lawn.

Ward had left her house at the same time as her father and was driving in a separate car behind him. As she drove by her parent's house, she saw two men. She followed them for two-tenths of a mile to McNair Elementary School. Police then showed up and arrested [petitioner] and his accomplice. Mrs. Estep came to the scene of the arrest and positively identified [petitioner] and his accomplice.

[Petitioner] and his accomplice were taken to the police department for booking. During the booking process, Officer Fitzgerald asked [petitioner] to take off two of the three shirts he was wearing. [Petitioner] told Officer Fitzgerald that if he wanted them off, he could take them off himself. A struggle ensued as the officers attempted to take the extra shirts off [petitioner]. Officer Fitzgerald stepped in front of [petitioner] and [petitioner] told him to "get out of my face." [Petitioner] then shoved Officer Fitzgerald with both hands, knocking Officer Fitzgerald backwards a step or two. Other Officers took [petitioner] down on the floor and handcuffed him while Officer Fitzgerald maced [petitioner]. [Petitioner] was charged with burglary for the incident at the Estep's house and assault for the incident at the police station.

(Doc. 10, Ex. E at 2-3.)

## II. PETITIONER'S GROUNDS FOR HABEAS CORPUS RELIEF

Petitioner claims three grounds for relief in this habeas action:
- (1) There was constitutionally insufficient evidence that petitioner or his alleged accomplice entered the house belonging to the victim to support the convictions.

(2) The trial court erred in failing to sever the burglary and the assault charges.

(3) Petitioner received constitutionally ineffective assistance of counsel because his trial counsel failed to move to suppress his pretrial show-up identification and to object to the victim's identification of him at trial.

Respondent argues that petitioner's grounds for habeas relief are without merit.

### III. STANDARD OF REVIEW

In the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Congress determined that federal habeas corpus relief may not be granted by a federal court on a claim that has been decided on the merits in state court unless that claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

28 U.S.C. § 2254(d)(1)-(2). The issue before this court in applying the AEDPA is not whether or not the state court or courts decided petitioner's ground for relief correctly or incorrectly under the applicable law. Renico v. Lett, 130 S. Ct. 1855, 1862 (May 3, 2010)(per curiam). Rather, a "state court's decision is contrary to clearly established law if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case." Tokar v. Bowersox, 198 F.3d 1039, 1045 (8th Cir. 1999). The issue a federal habeas court faces is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams v. Taylor, 529 U.S. 362, 409-10 (2000)(per curiam); see also Thaler v. Haynes, 130 S. Ct. 1171, 1173-74 (February 22, 2010)(per curiam). The "substantially unreasonable" standard "creates 'a substantially higher threshold' for obtaining relief than *de novo* review . . . and "demands

that state-court decisions be given the benefit of the doubt." Renico v. Lett, 130 S.Ct. at 1862 (internal citations omitted).

Furthermore, the state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003). Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief. Id.

## IV. DISCUSSION

**GROUND 1**

Petitioner asserts that his burglary conviction violated his right to due process of law, because there was insufficient evidence at trial to prove that he entered the Esteps' residence unlawfully, an essential element of the burglary charge.[1] The Supreme Court has stated that when

---

[1] Petitioner was charged in Count 1 of the amended information with violating R.S.Mo. § 569.160.1 which provides:

> A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:
>
> (1) Is armed with explosives or a deadly weapon; or
> (2) Causes or threatens immediate physical injury to any person who is not a participant in the crime; or
> (3) There is present in the structure another person who is not a participant in the crime.

Rev. Stat. Mo. § 569.160.1. The Missouri legislature defined "enter unlawfully or remain unlawfully" in this manner:

> {A] person "enters unlawfully or remains unlawfully" in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his purpose, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him

(continued...)

a habeas petitioner asserts that his conviction is supported by constitutionally insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).

The state presented evidence at trial that petitioner stood on the front porch of the victim's home and then walked toward the victim's attached garage, but passed out of sight before arriving at the garage. (Doc. 10, Ex. J at 97-101.) Although the door between the victim's garage and kitchen was locked, it was forcefully opened. (<u>Id.</u> at 104.) The door frame splintered and broke. (<u>Id.</u>) When the door opened, the victim screamed and saw one or more persons flee her garage. (<u>Id.</u> at 104-05.) A witness saw petitioner on the front lawn of the victim's house, and continuously observed him until a Hazelwood police officer detained him. (<u>Id.</u> at 144-52, 156-59.) A police detective later found a smudge, which the detective believed to be a boot print or shoe print, on the forced-open door. (<u>Id.</u> at 199-200, 204.) When this evidence is viewed in the light most favorable to the prosecution, as <u>Jackson</u> requires, the undersigned concludes that a "rational trier of fact could have found the essential element[] of the crime [of first degree burglary] beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319.

Petitioner argues that even if he entered the garage, that entry was lawful because the outer "large hanging garage door" was open. (Doc. 1, Ex. 1 at 17; Doc. 12 at 3.) He asserts that "entry through an open door is not burglary." (<u>Id.</u>) Burglary is a state crime, and the Missouri Court of Appeals disagreed with this argument in its 2003 opinion affirming petitioner's conviction. (Doc. 10, Ex. E at 6.) The

---

[1](...continued)
by the owner of such premises or by other authorized person. A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public.

Rev. Stat. Mo. § 569.010(8).

state appellate court ruled on this aspect of state law, and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Because there is sufficient evidence to find that petitioner was in the garage, and Missouri law states that petitioner's presence in the garage may constitute unlawful entry, this court concludes that the finding of unlawful entry is supported by constitutionally sufficient evidence. Therefore, this ground for relief is without merit.

**GROUND 2**

Petitioner contends that the trial court should have granted his motion to sever the two charged offenses for separate trials. Petitioner argues that the charges were not of the same or similar character, not part of the same transaction or connected, and not part of a common scheme or plan; that evidence of the assault charge inflamed the jury against him on the burglary charge; and that he was required to forgo his right to testify on the assault charge in order to exercise his right to not testify on the burglary charge.

The Eighth Circuit has stated that "the decision to join offenses in a single trial is a matter within the discretion of the trial judge under both Missouri and federal law[.]" Robinson v. Wyrick, 735 F.2d 1091, 1094 (8th Cir. 1984). "That decision may not normally be disturbed on review[.]" Id. A state court determination of the relationship between two crimes is within the category of state findings that are presumed correct under 28 U.S.C. § 2254(d). Wharton-El v. Nix, 38 F.3d 372, 374-75 (8th Cir. 1994). In Wharton-El, the Eighth Circuit held that when joinder was proper under state law and the trial court issued a cautionary statement to the jury that the jury must consider a defendant's guilt or innocence of each count separately, a refusal to grant severance did not render the trial unfair. Id. at 375.

In Closs v. Leapley, the habeas petitioner asserted that the joinder of two offenses for trial prejudiced him in that he could not

testify as to one charge without jeopardizing his claim of innocence as to the other charge, and therefore the refusal to sever prejudiced him. Closs v. Leapley, 18 F.3d 574, 578 (8th Cir. 1994). The court noted that one type of possible prejudice through joinder of offenses is a jury inference of criminal propensity, but there is no prejudicial effect when the evidence of each crime is simple and distinct. Id. The court held that prejudice as to the desire to testify on one charge and not another charge may only be established by "a persuasive and detailed showing regarding the testimony [that the defendant] would give on the one count he wishes severed and the reason he cannot testify on the other counts." Id. The court further held that the petitioner's assertion that there would have been prejudice simply because he disputed one count and not other counts did not satisfy the standard. Id. at 578-79.

In petitioner's case, the Missouri Court of Appeals stated that joinder is appropriate if the acts are connected, and acts are connected if they are in order or a series. (Doc. 10, Ex. E at 7 (quoting Missouri v. Morrow, 968 S.W.2d 100, 109 (Mo. 1998).) The Missouri Court of Appeals concluded that "[t]hese acts were connected by order in a series, and therefore, joinder was proper." (Id. at 7-8.) The court also concluded that the trial court did not abuse its discretion in refusing to sever the two charges. (Id. at 8.) Under the Wyrick standard, the trial judge was entitled to exercise his discretion, and this finding may not normally be reviewed. Wyrick, 735 F.2d at 1094. The trial court instructed the jury that "[t]he defendant is charged with a separate offense in each of the two counts submitted to you." (Doc. 10, Ex. D-1 at 5.) "Each count must be considered separately." (Id.) Under Wharton-El, the properly joined offenses were appropriately tried together in that the trial court issued an appropriate cautionary statement to the jury.

Petitioner asserts in his traverse that if the offenses had been severed, he would have testified on the assault of a law enforcement officer charge. (Doc. 12 at 11.) Petitioner gives a brief account of what he may have testified to if the assault charge had been tried separately from the burglary charge, and why he did not testify:

> Petitioner would have testified on the assault charge. . . . [Petitioner] would [have] testified that he didn't push, resist, or fight officers, and that a clear analysis of the video would show that [petitioner] only braced himself before he was attacked. The reason [petitioner] couldn't testify on the burglary charge was because of trial attorney[']s refusal to put [petitioner] on stand, as well as thoughts that [Petitioner's alleged accomplice] would be called to testify on [petitioner]'s behalf.

(Id.)

Petitioner states that the reason that he could not testify was counsel's "refusal to put [petitioner] on stand, as well as thoughts that [petitioner's alleged accomplice] would be called to testify on [petitioner]'s behalf." (Id.) At trial, petitioner stated to the court that he understood that he had an absolute right to testify, he understood that nobody could keep him off of the witness stand if he wanted to testify, and that he, after consultation with counsel, decided that it was not in his best interest to testify. (Id. Ex. J at 198-99.) This is at odds with petitioner's current contention that trial counsel refused to put him on the stand. The Missouri Court of Appeals has stated that criminal defendants may testify as to one charge and invoke the right against self-incrimination as to other charges that are properly joined in the same trial. Missouri v. Strauss, 893 S.W.2d 890, 892 (Mo. Ct. App. 1995). Thus petitioner was not forced to forgo his right to testify on the assault charge in order to exercise his right to not testify on the burglary charge. Petitioner has not shown prejudice under the Closs standard.

Petitioner's argument that he was prejudiced through jury inflammation fails because the evidence of each crime was simple and distinct as required by Closs. Closs, 18 F.3d at 578. The assault charge was supported by video evidence and the testimony of the assault victim (Doc. 10, Ex. J at 174-185), and the burglary charge was supported by testimony of the burglary victim, the testimony of the witness who observed petitioner fleeing the scene of the burglary, the recording of the victim's 911 call, the testimony of a Hazelwood police detective, and the testimony of the officer who initially detained petitioner. (See Doc. 10, Ex. J.)

Because petitioner has not shown prejudice under Closs, a lack of Wyrick proper joinder, or a defect in the Wharton-El combination of proper joinder and cautionary statement to the jury, the decisions of the Missouri state courts denying relief were reasonable. This ground for habeas relief is without merit.

**GROUND 3**

Petitioner alleges he received constitutionally ineffective assistance of counsel, because his trial counsel failed to move to suppress his pretrial show-up identification and failed to object to the victim's identification of him at trial.

When a federal habeas court must consider ineffective assistance of counsel claims, the Supreme Court has held that "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland v. Washington, 466 U.S. 668, 689 (1984).

> First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 688.

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). The performance of an attorney is not deficient because the attorney failed to object to admissible evidence. Garrett v. United States, 78 F.3d 1296, 1302 (8th Cir. 1996).

If the victim's identifications of petitioner were admissible under Missouri law, then, under Garrett, counsel was not ineffective for failing to object to their admission. In Clark v. Caspari, the Eighth Circuit noted that under Missouri law "[i]dentification testimony is

admissible unless the pretrial identification procedure was unnecessarily suggestive <u>and</u> the suggestive procedure made the identification unreliable." <u>Clark v. Caspari</u>, 274 F.3d 507, 511 (8th Cir. 2001).

> In determining the reliability of a witness's identification[] Missouri courts consider: (1) the witness's opportunity to view the suspect at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of any prior description given by the witness; (4) the level of certainty demonstrated by the witness in making the identification; and (5) the length of time between the event and the identification.

<u>Id.</u> <u>See also</u> <u>Missouri v. Middleton</u>, 995 S.W.2d 443, 453 (Mo. 1999)(en banc).

The Missouri Court of Appeals addressed this very standard in petitioner's second appeal, and found that the victim's identification of petitioner was reliable. (Doc. 10, Ex. I at 5.) The court noted that the victim:

> had more than one opportunity to view [petitioner] and the other man. Victim also had a high degree of attention. She testified that she looked through the peephole because she will not open her door unless she knows who is there. In addition, victim was observing the two men when she called 911. Finally, the amount of time from when the crime occurred until victim went to the school and identified [petitioner] was short.

(<u>Id.</u>) The Missouri Court of Appeals addressed this issue and found that the testimony was reliable and admissible in a Missouri court. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle</u>, 502 U.S. at 67-68. Because the pretrial identification evidence was admissible, counsel was not ineffective for not objecting to the victim identifying petitioner at trial.

This ground for habeas relief is without merit.

## VI. CONCLUSION

For the reasons stated above, the undersigned recommends that the petition of Marcel Clark for a writ of habeas corpus should be denied and the action dismissed with prejudice.

The parties have 14 days in which to file written objections to this Report and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

    /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on July 13, 2010.